GILREATH & SON *vs.* HOLSTON SALT AND PLASTER COMPANY.

1. Where goods were consigned to be sold on commission, the consignee who received and sold them, but failed to pay over the proceeds, created a debt while acting in a fiduciary character, from which he was not released by obtaining a discharge in bankruptcy.

2. A request to charge not founded on the evidence is properly refused.

Bankruptcy.   Bailments.   Before Judge FAIN.   Bartow Superior Court.   January Term, 1881.

To the report contained in the decision it is only necessary to add that the following was the testimony of the agent of the company who transacted the business with defendants, and that of one of the defendants in respect to the manner of sale of the salt:—

The agent of the company testified as follows:

"I ceased to be traveling agent for plaintiff 20th March, 1877. I was engaged selling salt on commission and selling plaster. My duties were to place salt on commission and collect for same. Plaintiff had no other in Bartow county except myself. E. Middleton succeeded me. I have to go by recollection, not having my book before me. I think annexed account is correct. I did furnish defendants salt to sell on commission for plaintiff. I did not contract to sell salt to defendants and charge them with same as purchasers. When I contracted with them, they said commissions would not pay them to handle it, that they would have to sell on a credit. I told them that we would indulge them, that they would get the money on the salt before we would have to force payment from them. I never gave them authority to sell on time, unless that gave it to them. I never made any arrangement other than according to regular terms on commistion, except agreeing to be lenient in making collections, in view of the fact that they had to sell on a credit: De-

fendants did cease to handle our salt for a while; don't know how long. In order to get defendants to handle more of plaintiff's salt, I told them we would be lenient, as they had to sell on credit. I did not intend to change the contract of sale on commission, but thought their objection was met by giving them time to realize on their sales before they would have to pay plaintiffs for the salt. There was no arrangement for defendants to sell the salt on time, as they did their other goods, further than is stated above."

One of defendants testified as follows:

"Several years after the war defendants did sell salt for plaintiff on commission, and did settle for the salt so sold about every sixty-days. In 1873 or 1874, defendants commenced doing business on time; and after they had settled up in full with plaintiff for all the salt sold for them on commission, defendants purchased the salt to carry on their business from other parties for the space of one year or longer, and they had ceased selling salt for plaintiff on commission for fully one year. The agent of the plaintiff, who was a man by the name of Chapman, called to see defendants at their store-house in Cartersville, and proposed that defendants should again use the salt of the plaintiff, as they had been doing a year or so before. Defendants informed the agent that they were then doing a time business, and would not take plaintiff's salt on commission, as they had been doing in the past, for the reason that they were selling all they kept on time. Plaintiff's agent insisted that defendants should handle said salt, and witness informed said agent at that time and place that defendants would not take their salt on commission, but witness said to said agent that if the plaintiff saw proper to send salt to defendants with the understanding that the salt was to be paid for as soon as defendants could, just as they paid for their other goods, the company might ship them salt. To this the agent assented, and it was then agreed that defendants should

order salt under said agreement from said company, as they might need it, to be dealt out on time by defendants, and to be paid for as defendants paid for their other goods. Under this agreement the salt was not to be handled by defendants as commission merchants at all; defendants expressly refused to take said salt as commission merchants, and the agent was so informed and understood it. Defendants made orders for the salt under said agreement, and the salt came and was sold by defendants on time, as they did their merchandise. A few sacks of said salt were on hand when defendants were adjudged bankrupts, and were included in their bankrupt schedule, and passed into the hands of A. M. Foute, their assignee, and were exempted by said Foute to defendants under the provisions of the bankrupt law. Every dollars worth of salt ever sold on commission had been settled for long before this agreement was made. Defendants owe plaintiffs nothing as commission merchants, and have no salt on hand for them as such. After defendants quit selling the salt on commission, as stated, said agent for the plaintiffs ceased coming so often for his pay, and quit altogether counting the sacks of salt on hand, as was his practice when defendants sold on commission for plaintiffs."

STANSELL & WOFFORD; G. S. TUMLIN, by R. J. McCAMY, for plaintiffs in error.

E. D. GRAHAM, for defendants.

SPEER, Justice.

1. The defendants in error brought suit against the plaintiffs in Bartow superior court for the sum of two hundred and sixty-one dollars and twenty-eight cents, and interest, alleging that they had consigned to Gilreath & Son, in several different consignments, sacks of salt to be sold by said Gilreath & Son for them, and the proceeds of

such sale to be accounted for by them, after deducting their commission and expenses, or the salt returned. That they had demanded of said Gilreath & Son the proceeds of sale or a return of the salt, and that said Gilreath & Son had failed and refused to pay over to them the proceeds of said sale or return said salt, and that the salt unaccounted for was of the value of $261.28, defendants had fraudulently converted said salt, or its proceeds, to their own use.

Defendants pleaded they were not commission merchants for plaintiffs, and had been adjudged bankrupts by the proper court, and that their petition for a discharge from their debts, including the debt sued on, was still pending, and that pending their petition in bankruptcy plaintiffs could not sue, and if they could the suit ought to be stayed until the final hearing on their petition for discharge.

Under the pleadings, evidence and charge of the court, the jury found a verdict for the plaintiff below for the amount sued for. Defendant made a motion for a new trial, which was refused by the court and defendant excepted.

The grounds of the motion were:

(1.) That the verdict is against the evidence and the justice and equity of the cause.

(2.) That the court refused to give in charge to the jury the following written request, as made by defendants below:

"If you believe from the evidence that the agent of the plaintiff authorized the defendants to sell out the salt on time, and to be paid for by defendants as defendants paid for their other goods, this would be a sale for which defendants would be liable to pay, but not as commission merchants."

(3.) Because the verdict is contrary to law.

It was admitted on the trial by the parties that the account sued on was correct and unpaid; that plaintiffs in error had been regularly adjudged bankrupts on their own petition, that their merchandise and other property had

been turned over to A. M. Foute, assignee, under a regular deed of assignment, that said bankrupt proceeding was still pending in the United States court, and that the assignee had sold the property of the bankrupts, except what had been exempted to them under the bankrupt law.

The evidence shows that defendants had been receiving salt to be sold on commission for the plaintiff below for some time previous, but defendants claim " that the salt sued for was delivered to them to be sold on time and accounted for as their other goods."

Under our view of the evidence, we do not find that any satisfactory proof was tendered to establish a new agreement, so as to change the former relation between these parties, but a mere modification of the original contract. There was no agreement as to price or time of payment, and no such new agreement as would authorize the charge requested, and assigned as error in the second ground of the motion. This seems to have been the grounds of defense relied on in the court below. Here plaintiffs in error claim, that, admitting it was a debt due by defendants below as commission merchants for the salt sold as belonging to their principal, still it was such a debt as was dischargeable in bankruptcy. This question has been ruled adversely to plaintiffs in error in the case of *Meadow & Bro. vs. George Sharpe*, reported in 54 *Ga.*, 125, and which was but the re-affirmance of the same principle ruled in 44 *Ga.*, 460. In the first case cited it was ruled, "one who receives goods consigned to him to be sold on commission, and who sells the same, and who fails to pay over the proceeds, creates a debt whilst acting in a fiduciary character, from which he is not released by obtaining a discharge in bankruptcy."

It is insisted, however, that these cases are overruled by the case in 5 Otto, United States Reports, 704, and that being a decision of the supreme court of the United States touching the construction of the bankrupt act, it must prevail. We recognize the rule claimed, that in the

construction of any law of congress, it would be the duty of this court to conform its decisions to those made by the supreme court of the United States when the points ruled are in principle the same, but on a careful examination of the case in 5th Otto, we do not regard it necessarily in conflict with the rulings in the 44th and 54th *Ga.*, and are not prepared to reverse those rulings without a construction of the act by the supreme court of the United States upon the question therein made.

We are aware that the decisions on this question are in conflict in different states, but we are inclined to adhere to the rulings made by this court until at least a more satisfactory ruling from the supreme court of the United States may settle the question definitely.

Let the judgment below be affirmed.